CULPEPPER, Judge.
This is a suit for damages to a large gravel truck which fell through a bridge on a parish road. Plaintiffs are Emmco Insurance Company, collision insurer of the truck, which paid the damages and took a subrogation, and Etienne Hardy, owner of the truck, who seeks the deductible portion not paid by his insurance. Defendant is the Beauregard Parish Police Jury, which is responsible for the construction and maintenance of the bridge. From an adverse judgment, plaintiffs appealed.
The issue is whether the Police Jury was negligent.
The bridge in question crosses Dry Creek on a secondary parish-maintained road near Longville in Beauregard Parish. It was built in 1964 of creosote treated wood materials. There are pilings driven in the ground, on top of which are 10" x 10" caps with about 12-foot spans. The caps support 4" by 10" stringers, 14 feet in length and 18 inches apart, running crosswise the bridge. The decking across the top of the stringers is 3" by 8" boards and runs lengthwise the bridge. The bridge is 80 to 100 feet long and only wide enough for one way traffic.
The road runs east and west. Approaching the bridge from the west, as plaintiff’s truck did, there is a curve to the left. Just beyond the east end of the bridge the road goes up an incline.
*500 The accident occurred on September 30, 1967. For some time, heavy truck-trailer vehicles, loaded with anywhere from 40,-000 to 58,000 pounds of sand or gravel from a pit near Longville, had been using this bridge.
On the morning in question, seven or eight trucks loaded at the pit and proceeded on the road in an easterly direction. Three of the drivers in leading trucks said they crossed Dry Creek without difficulty and saw no defects in the bridge. The plaintiff, Mr. Etienne Hardy, was driving one of his two trucks with a net load of about 58,000 pounds. He testified that when he reached Dry Creek he saw a hole in the bridge on the right-hand side near the east end. Hardy described this hole as being 18 to 24 inches long (lengthwise the bridge) and about 8 inches wide (crosswise the bridge). He says he was going slow, 10 to 15 miles per hour, so he was able to turn to the left and avoid striking the hole.
The next truck behind Hardy was also owned by him but driven by Larry Frederick with a net load of 41,180 pounds. Frederick testified that as he approached the bridge at a speed of 10 to 12 miles per hour, the sun, which was in the east, shined in his eyes. He did not see the hole near the east end until he was on the bridge. Frederick says he applied his brakes but was unable to stop before he hit the hole. When he did, one whole span of stringers caved in and the truck went down on the pilings, sheering off the front and rear axles of the truck. The trailer pushed forward but apparently was not damaged.
The evidence also shows that Mr. Ryan Harper, police juror from Ward 8 in which the bridge is located, inspected this bridge at least once a week. He testified he knew these heavy gravel trucks were using the bridge and for this reason he was careful to inspect it often. Members of his work crew said they inspected the bridge two or three times a week. The method of conducting these inspections was to drive a truck onto the bridge and then get under it and check the stringers for cracks. On previous occasions they had found three or four cracked stringers and replaced them. However, they testified that on their last inspections which were within a week of the time of the accident, the bridge was sound. The evidence does not show there were any rotten timbers or other defects prior to the day of the accident.
The record also shows that prior to the accident there were no load limit or speed limit signs at the bridge. After the accident, 10 ton load limit and 15 mile per hour speed limit signs were placed at each end. The police juror and the truck drivers explained that speed is an important factor in crossing such a bridge with a heavy load. At excessive speeds, a heavy truck may bounce and increase greatly the stress and strain on the bridge.
The evidence also shows that the loads which these trucks were hauling were within the legal limits for state highways.
Plaintiff’s principal contention is that the Ward 8 police juror knew heavy gravel trucks were using this bridge and he failed to erect load limit and speed limit signs to warn the drivers of the possible hazard involved.
The applicable statute in effect at the time was R.S. 32:235, subd. B, which reads as follows:
“Local municipal and parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this Chapter, regulations of the department and director of public safety adopted pursuant hereto, and local traffic ordinances adopted pursuant to the authority granted by R.S. 32:41 and 32:42. All such traffic control devices hereafter erected shall conform to the *501 department’s manual and specifications.” (Acts of 1962, No. 310, Sec. 1)
Plaintiffs cite no statute which requires that the police jury post load limit and speed limit signs on all parish maintained bridges. This is a matter which is left within the discretion of the jury. To recover in this case, plaintiffs must show that the Ward 8 police juror was negligent in not posting the signs or not properly maintaining the bridge.
In Norman v. State, 227 La. 904, 80 So. 2d 858 (1955) our Supreme Court stated the applicable law as follows:
“Reverting, then, to the obligation of the Department of Highways to the traveling public, it may be stated in general that public bridges and roads must be maintained in a reasonably safe condition and that a traveler has the right to assume that a bridge is strong enough to support the weight of his vehicle. But this rule has its exceptions. It is applicable, of course, on major State highways as to all vehicles of weights within the permissible limits of tonnage allowed by State law. But it is clearly not appropriate to the use of heavy equipment over a secondary road and bridge such as the one in question.”
There is actually no showing that the construction of the bridge was insufficient to carry the weight of plaintiff’s damaged truck. Trucks of similar and even greater weight had been using the bridge for some time. The thing that actually caused this accident was that a piece of the bridge decking broke out, from some unknown cause and at some unknown time. Plaintiff’s truck hit this hole and caused an unusual strain on the bridge.
There is absolutely no showing that the police juror of Ward 8 had any knowledge of this defect. He and his crew testified they had inspected the bridge within a week prior to the accident, probably as little as two or three days before. Three of the truck drivers who crossed the bridge ahead of plaintiff on the morning of the accident testified they saw no hole. It may be that one of these trucks, traveling at an excessive speed in order to go up the incline beyond the bridge, bounced and broke this piece of decking.
It is our conclusion that no negligence on the part of the police juror has been shown. He had no statutory duty to post load or speed limit signs. Furthermore, there is no showing that the bridge could not safely carry the weight of these trucks, except for the hole in the decking. Finally, there is no proof that the juror knew or should have known of the defect in the bridge.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.